Opinion to: SJR TGT TJ EVK ERA GCH LCH JB 
JS

















Opinion issued October 23,
2009

 

 

 

 

 

 

 
















 
 
 
 
 




 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 



 

NO. 01-08-00227-CV

 



 

MARICELLA BENAVENTE, Appellant

 

V.

 

DANIEL GRANGER, Appellee

 



 

On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 2004-05295










 

DISSENTING
OPINION

I believe that Granger’s own testimony establishes that he
violated his duty of reasonable care and engaged in specific acts of negligence
that caused the collision.     According to his testimony, as Granger
approached the intersection in his Camaro Z28 with his son en route to work, he
started to reduce his speed some 1,000 yards or more from the
intersection.  There were two or three
cars in the lane in which he was traveling  that were already stopped at the light.  The light changed, and he continued forward,
with the same cars ahead of him in the intersection.  When he was about to cross the intersection, he
was distracted by a car approaching from the right and “glanced to the right”
“for a brief second” to look at it.  He
had a brief conversation with his son about the car[1]
before turning back to look ahead again. 
At that point, despite the fact that he later claimed at trial that he
had not been “tailgating,” he saw the cars ahead of him stopped on the other
side of the intersection, “just saw brake lights,” “applied (his) brakes . . .
very hard,” but “there just wasn’t enough room,” and he hit Benavente’s car.  Although he had previously testified that it
had not been raining that day, when describing the actual collision, Granger asserted
that “the intersection was slippery from oil or whatnot . . . and [he] just
could not stop completely.”  

Despite
Granger’s contention that he had been driving only “I would guess between five
and ten miles per hour, possibly even less,” and had rear-ended Benavente in what
he described as a “very light” impact, he damaged her vehicle in both the rear
and front, damaged the front lights, and caused the hood to be “crumpled and
bent.” Despite Granger’s insistence that he had looked to the right only “for a
brief second,” Granger himself established that he had looked away long enough both
(1) to engage in a conversation with his son about the approaching car and
(2) to identify the car specifically by both color (yellow) and make
(Lamborghini).  

How is one who admits to being distracted
from moving, stop-and-go traffic long enough to identify the color and make of
an especially rare automobile not negligent
when, as “[he] was just entering the intersection,” he “looked forward and saw
that the cars had stopped on the other side,” and yet still slammed into the
rear of the car in front of him with sufficient force to cause that vehicle to
hit the car in front of it?  



We may all be able to tell a Pontiac from a Volvo, but
when it comes to rare cars, the identification is not only not instantaneous, but
requires some careful review to distinguish one from another.  Fiat?  Ferrari?
 Maserati?  Alfa Romeo? Lancia?  Bizzarrini?  DeTomaso?  Ghia?  Intermeccanica?
 Iso?  Ital Design? Pininfarina?  Vignale?  Zagato?  Mercedes?  Bentley?

Under
these facts and the reporter’s record provided, I would hold that Benavente
provided overwhelming evidence of specific acts of negligence on Granger’s
part: not paying attention to the traffic in front of him, following too
closely for the conditions, and driving too rapidly for the conditions.  But for these specific acts of negligence,
Granger would not have rear-ended Benavente’s car.

Considering
all of the evidence, the jury’s verdict was so contrary to the great weight and
preponderance of the evidence as to be clearly wrong and unjust.  I would sustain appellant’s issue and remand
for a new trial.

 

 

Jim Sharp

Justice

 

Panel consists of Chief
Justice Radack, and Justices Sharp and Taft.

 

Justice Sharp, dissenting.











[1]              Granger was curiously inconsistent about how this
conversation started. 

 

Although we only have his cross-examination testimony
from trial, as the parties provided a limited record on appeal, it is apparent
from that testimony that Granger changed his position repeatedly on this
point.  The record at trial suggests that
Granger first stated, in his deposition before trial, that his son had been the
one to point out the car to him.  But at
trial, he took the position that it was he who had pointed out the Lamborghini
to his son, even testifying that he had told his son, “Look at that.  I mean check that out.”  Twice he denied that it was his son who had
drawn his attention to the car, the second time in response to a question from
the judge.  But after being confronted
with an audiotape of his deposition, Granger changed his position again,
testifying that it had been his son who had pointed out the yellow Lamborghini.